UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CARNELL BOYD,

  Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]

  Defendant.

No. 17 C 3686

Magistrate Judge Mary M. Rowland

# MEMORANDUM OPINION AND ORDER

Plaintiff Carnell Boyd filed this action seeking reversal of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C § 636(c), and Plaintiff filed a request to remand for additional proceedings before the ALJ. This Court has jurisdiction pursuant to 42 U.S.C. § 1383(c) and 405(g). For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

## I. PROCEDURAL HISTORY

---

[1] Nancy A. Berryhill has been substituted for her predecessor, Carolyn W. Colvin, as the proper defendant in this action. Fed. R. Civ. P. 25(d).

Plaintiff applied for DIB on June 18, 2013, alleging that he became disabled on February 1, 2012 because of diabetes, arthritis, vitiligo, pernicious anemia, high blood pressure and high cholesterol. (R. at 73). This claim was denied initially on November 22, 2013, and upon reconsideration on June 14, 2014, after which Plaintiff filed a timely request for a hearing. (*Id.* at 72–87, 103). On December 3, 2015, Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ). (*Id.* at 34–71). The ALJ also heard testimony from Kari Seaver, a vocational expert (VE). (*Id.*). Following the hearing, additional records were entered into the administrative record. (*Id.* at 23).

The ALJ denied Plaintiff's request for DIB on April 28, 2016. (R. at 23–29). Applying the five-step sequential evaluation process, at step one the ALJ found that Plaintiff did not engage in substantial gainful activity since his alleged onset date of February 1, 2012. (*Id.* at 25). At step two, the ALJ found that Plaintiff had the severe impairment of osteoarthritis. (*Id.*). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listings enumerated in the regulations. (*Id.* at 26).

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[2] and determined that Plaintiff had the RFC to perform sedentary work except "he was limited to frequent handling with his non-dominant right upper extremity." (R. at

---

[2] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. § 404.1520(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008).

26). The ALJ determined at step four that Plaintiff was capable of performing past relevant work as a database design analyst. (*Id.* at 28). Accordingly, the ALJ concluded that Plaintiff was not under a disability at any time from February 1, 2012, the alleged onset date, through September 30, 2015, the date last insured. (*Id.* at 28).

On March 20, 2017, the Appeals Council denied Plaintiff's request for review. (R. at 1–6). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

## II. STANDARD OF REVIEW

A Court reviewing the Commissioner's final decision may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a

3

conclusion.") (citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

### III. DISCUSSION

Plaintiff makes a number of arguments challenging the ALJ's decision. After reviewing the record and the parties' briefs, the Court is convinced by Plaintiff's argument that the ALJ erred when evaluating Plaintiff's subjective symptom statements.

Because an RFC assessment frequently "depend[s] heavily on the credibility of [a claimant's] statements concerning the 'intensity, persistence and limiting effects' of his symptoms," the Court begins with Plaintiff's argument that the ALJ improperly assessed his symptom statements. *See Bjornson v. Astrue,* 671 F.3d 640, 645 (7th Cir. 2012). The Regulations describe a two-step process for evaluating a claimant's own description of his or her impairments. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, at *2; *see also* 20 C.F.R. § 416.929. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . . ." SSR 16-3p, at *2.[3]

In evaluating the claimant's subjective symptoms, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano*, 556 F.3d at 562 (citations omitted); *see*

---

[3] Since the ALJ issued his decision in this case, the SSA has issued new guidance on how the agency assesses the effects of a claimant's alleged symptoms. SSR 96-7p and its focus on "credibility" has been superseded by SSR 16-3p in order to "clarify that subjective symptom evaluation is not an examination of the individual's character." *See* SSR 16-3p, 2016 WL 1119029, at *1 (effective March 16, 2016). As SSR 16-3p is simply a clarification of the Administration's interpretation of the existing law, rather than a change to it, it can be applied to Claimant's case. *See Qualls v. Colvin*, No. 14 CV 2526, 2016 WL 1392320, at *6 (N.D. Ill. Apr. 8, 2016). The Court acknowledges the Administration's recent clarification regarding SSR 16-3p, instructing adjudicators only to apply this ruling when making "determinations and decisions on or after March 28, 2016." *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct. 25, 2017). Nevertheless, the Court continues to follow *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) indicating SSR 16-3p and SSR 96-7p are not substantively different.

20 C.F.R. § 404.1529(c); SSR 96-7p; SSR 16-3p. An ALJ may not discredit a claimant's testimony about his symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562 (citing 20 C.F.R. § 404.1529(c)(2)). Even if a claimant's symptoms are not supported *directly* by the medical evidence, the ALJ may not ignore *circumstantial* evidence, medical or lay, which does support claimant's credibility. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir. 2003).

The Court will uphold an ALJ's subjective symptom evaluation if the ALJ gives specific reasons for that finding, supported by substantial evidence. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). The ALJ's decision "must contain specific reasons for a credibility finding; the ALJ may not simply recite the factors that are described in the regulations." *Steele*, 290 F.3d at 942 (citation omitted). "Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Id*.

As an initial matter, Plaintiff argues that the ALJ used "meaningless boilerplate" language as an explanation for her subjective symptom evaluation. (Pl.'s Me., Dkt 12 at 15). In her decision, the ALJ stated in part:

> After careful consideration of the evidence, the undersigned finds that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medial evidence and other evidence in the record for the reasons explained in this decision.

(R. at 25). This is the same type of language that the Seventh Circuit has repeatedly described as "meaningless boilerplate" because it "yields no clue to what weight the [ALJ] gave the testimony." *Bjornson,* 671 F.3d at 645. "However, the simple fact that an ALJ used boilerplate language does not automatically undermine or discredit the ALJ's ultimate conclusion if [she] otherwise points to information that justifies [her] credibility determination." *Pepper v. Colvin,* 712 F.3d 351, 367–68 (7th Cir. 2013). While the Court is not persuaded that the ALJ's use of this boilerplate language alone is grounds for reversal in this case; the Court finds that the reasons provided by the ALJ for rejecting Plaintiff's symptom statements are legally insufficient and not supported by substantial evidence, warranting remand on this issue. *See Ghiselli v. Colvin*, 837, F.3d 771, 778–79 (7th Cir. 2016).

The ALJ did not fully credit Plaintiff's allegations because: 1) the symptoms are not "entirely consistent" with the medical evidence and evidence in the record; 2) "after one appointment with a rheumatologist, the claimant chose not to pursue additional workup or therapy;" and 3) "[h]e also refused pain medications and did not try wrist splints." (R. at 28). There are several errors in the ALJ's analysis.

First, an ALJ may not discount a claimant's symptom statements "solely because they are not substantiated by objective evidence." SSR 16-3p at *5; *see Moore,* 743 F.3d at 1125 (finding that "the ALJ erred in rejecting [claimant's] testimony on the basis that it cannot be objectively verified with any reasonable degree of certainty."). This is particularly true with allegations of pain. *See Hall v. Colvin,* 778 F.3d 688, 691 (7th Cir. 2015) ("The administrative law judge's most

7

serious error, one we've noted in previous cases, is her belief that complaints of pain, to be credible, must be confirmed by diagnostic tests.") (citations omitted); *Pierce v. Colvin*, 739 F.3d 1046, 1049–50 (7th Cir. 2014) ("An ALJ may not discount a claimant's credibility just because her claims of pain are unsupported by significant physical and diagnostic examination results.").

Here, the ALJ discounted Plaintiff's allegations because they were "not entirely consistent" with the medical evidence. (R. at 27). Although the ALJ summarized some medical evidence, she failed to explain *how* the evidence recited contradicts Plaintiff's allegations. *See Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (finding that "the ALJ does not explain why the objective medical evidence does not support [claimant]'s complaints of disabling pain, and his failure to do so constitutes error); *Perry v. Colvin*, 945 F.Supp.2d 949, 965 (N.D. Ill. 2013) ("[T]he act of summarizing the evidence is not the equivalent of providing an analysis of the evidence."). Further, the ALJ did not address evidence that corroborates Plaintiff's allegations. For instance, the ALJ failed to mention a consultative examiner's assessment that Plaintiff "has symptoms consistent with peripheral neuropathy," corroborating his allegations of numbness and pain. (R. at 398). *See Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016) ("An ALJ cannot recite only the evidence that supports his conclusion while ignoring contrary evidence.").

Second, an ALJ must not draw negative inferences about a claimant's symptoms from a failure to obtain treatment, "without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his

8

or her complaints." SSR 16-3p, *8; s*ee Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014) (finding error when ALJ did not explore reasons for claimant's decision to forgo surgery); *Thomas v. Colvin*, 826 F.3d 953, 960 (7th Cir. 2016). Before making a negative inference for lack of treatment, ALJ's are instructed to consider, *inter alia*, whether a claimant has structured his or her daily activities so as "to minimize symptoms to a tolerable level" and whether a claimant refuses to take prescription medications "because the side effects are less tolerable than the symptoms." SSR 16-3p, *9–10. Here, the ALJ did not discuss reasons why Plaintiff chose not to pursue additional workup or therapy after his appointment with a rheumatologist on March 16, 2015. The progress note from this appointment explained that Plaintiff "does not want to get the EMG test due to prior bad experience with the needles and shocks being very painful and he doesn't believe that the EMG test will help figure out the problem." (R. 461). Likewise, the ALJ did not discuss reasons why Plaintiff refused pain medications or whether he structured his daily activities "so as to minimize symptoms to a tolerable level." *See Beardsley*, 758 F.3d at 840. In his testimony, Plaintiff explained that he did not want to take pain medications because he was already taking 10 pills a day, stating, "I don't like taking pills. . . I made a decision I don't want to take any more. . . . I just live with the pain." (R. 53). In his testimony, Plaintiff described having his brother and mother assist him with personal hygiene and household chores due to pain. (R. at 57–58). The ALJ erred by not considering these explanations or ways Plaintiff may have structured his activities to tolerate the pain before drawing a negative inference.

9

Third, the ALJ failed to address many of the requisite factors outlined in SSR 16-3p and its predecessor SSR 96-7p such as daily activities, medication side effects, measures other than treatment used to relieve pain, aggravating factors and other limitations. For instance, the ALJ did not discuss numerous limitations on daily activities that Plaintiff described in his testimony and function reports such as difficulties dressing, getting in and out of the shower, washing himself, brushing his hair; being unable to do household chores due to pain; and needing his brother to help him shave and do dishes and his mother to help him do the laundry. (R. at 57–58, 205–07). Without addressing these factors, the Court does not "have a fair sense of how the applicant's testimony is weighed." *Steele*, 290 F.3d at 942.

Defendant admits that that the ALJ's assessment of Plaintiff's allegations "was not perfect," but argues that "[t]he ALJ's analysis of a claimant's allegations does not need to be flawless." (Def.'s Resp., Dkt. 15 at 7). It is true that "[n]ot all of the ALJ's reasons must be valid as long as *enough* of them are," *Halsell v. Astrue*, 357 F. App'x 717, 722–23 (7th Cir. 2009) (emphasis in original). However, here, the ALJ did not provide "enough" valid reasons for discounting Plaintiff's symptom statements. *See Ghiselli*, 837 F.3d at 778; *see also Thomas v. Colvin*, 745 F.3d 802, 806–07 (7th Cir. 2014); *Allford v. Barnhart,* 455 F.3d 818, 821 (7th Cir. 2006) ("The administrative law judge based his judgment call on a variety of considerations but three of them were mistaken. Whether he would have made the same determination had he not erred in these respects is speculative.").

In sum, the ALJ failed to "build an accurate and logical bridge from the evidence to her conclusion." *Steele*, 290 F.3d at 941 (internal quotation omitted). This prevents the Court from assessing the validity of the ALJ's findings and providing meaningful judicial review. *See Scott*, 297 F.3d at 595. For these reasons, the Court finds that the ALJ did not offer substantial evidence for discounting Plaintiff's symptom statements, which is an error requiring remand.[4] On remand, the ALJ shall reevaluate Plaintiff's allegations with due regard for the full range of medical evidence. *See Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). The ALJ shall then reevaluate Plaintiff's RFC, considering all of the evidence of record, including Plaintiff's testimony, and shall explain the basis of her findings in accordance with applicable regulations and rulings. Finally, with the assistance of a VE, the ALJ shall determine whether there are jobs that exist in significant numbers that Plaintiff could have performed

## IV. CONCLUSION

For the reasons stated above, Plaintiff's request to remand for additional proceedings [12] is **GRANTED**, and the Commissioner's motion for summary judgment [15] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

---

[4] Because the Court remands on this basis, it need not address Plaintiff's other arguments at this time.

E N T E R:

Dated: July 5, 2018

MARY M. ROWLAND
United States Magistrate Judge